FILED

07/14/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0471

DA 24-0471

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 154N

IN THE MATTER OF:

L.S.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDI-2024-19
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        James C. Murnion, Murnion Law, Missoula, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Jeff Sealey, Assistant
Attorney General, Helena, Montana

        Kevin Downs, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs:  June 17, 2026

Decided:  July 14, 2026

Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 L.S. appeals from the order entered by the First Judicial District Court, Lewis and Clark County, on June 17, 2024, which involuntarily committed her to the Montana State Hospital for a period not to exceed 90 days for care, treatment, and evaluation of her mental health needs. L.S. contends the commitment proceeding violated her right to due process because she suffered from an inability to hear the proceeding that was not remedied by the District Court. She requests plain error review of the issue.

¶3 On Saturday, June 8, 2024, L.S.'s husband took her to a hospital emergency room, reporting that L.S., who was 76 years old and suffering from a variety of physical ailments, was also experiencing hallucinations and delusional thinking, and was unable to care for her basic needs. He also reported that L.S. had refused to take her medications over the past days. L.S. was evaluated by a certified professional person, Wendy Bazinet, who determined that L.S. suffered from a mental disorder and required commitment, and L.S. was placed at Montana State Hospital. On Monday, June 10, 2024, the County Attorney's office filed a petition for commitment, with Bazinet's report attached.[1]

---

[1] The report included extensive references to Bazinet's conversations with L.S.'s husband about L.S.'s history, and to extensive comments made by L.S. about her many medical conditions and

¶4     That morning, the District Court found the petition was supported by probable cause and ordered L.S. to be brought before the court at 10:30 a.m. to be advised of the petition and of her rights in the proceeding. L.S. was represented by counsel and appeared by video from Montana State Hospital. During the hearing, and while the District Court was advising her of her rights, L.S. began speaking to a person physically with her at the State Hospital, identified in the transcript as a hospital employee. The hospital employee gave short answers to L.S. during the court's advisory, to which L.S. replied, "I can't hear you." When the District Court concluded the hearing, the hospital employee told L.S. her attorney was going to call her on the phone, to which L.S. replied, "I don't know if I'll be able to hear that either."

¶5     The professional person evaluated L.S. a second time on the morning of Thursday, June 13, 2024, in the presence of L.S.'s attorney and another mental health professional. That afternoon, the District Court conducted the evidentiary hearing on the petition. At the start of the hearing, L.S.'s attorney advised that she and L.S. were ready to proceed, without mention of any concern over L.S.'s ability to participate. The State called Bazinet and, early in her testimony, L.S.'s counsel asked if she could speak louder because "[L.S.] is struggling to hear[.]" The District Court replied, apparently to Bazinet, "if you could[,]" and thereafter Bazinet testified at length without further interruption. The transcript reflects that, during Bazinet's cross-examination by L.S.'s counsel, L.S. said, "[w]hat did she say?"; followed by counsel stating, "[i]s that better when she speaks like that?";

her opinions. No indication was made or concern raised in the report about L.S.'s inability to hear or communicate with Bazinet.

3

to which L.S. stated an affirmative, "[u]h-huh." Thereafter, the cross-examination, examination of Bazinet by the District Court, and recross-examination by L.S.'s counsel followed. A similar exchange occurred during the testimony of L.S.'s husband, who was likewise asked to speak closer to the microphone, and thereafter testified at length without apparent problem. L.S. testified on her own behalf, during which she stated she had been given "hearing aids[,]" or "plastic things that they put over your ears[]" that she had used "to try and hear this morning." After L.S.'s testimony, the District Court announced its findings supporting commitment from the bench, during which L.S.'s counsel indicated that L.S. stated she could not hear, and the District Court indicated it was speaking close to the microphone in a louder tone, and did not think it could "change the fact that she can't hear." No objections or further concerns were raised.

¶6 L.S. appeals, arguing the District Court failed to ensure she could hear during the proceeding, which violated her due process rights and requires reversal of the order of commitment.

¶7 "Due process claims arising from involuntary civil commitments are subject to plenary review." *In re L.K.*, 2009 MT 366, ¶ 11, 353 Mont. 246, 219 P.3d 1263 (citing *In re T.M.*, 2004 MT 221, ¶ 7, 322 Mont. 394, 96 P.3d 1147). "It is well-established, with a few exceptions, that we will not address issues raised for the first time on appeal." *In re C.B.*, 2017 MT 83, ¶ 16, 387 Mont. 231, 392 P.3d 598. A party seeking plain error review "bears the burden of establishing that: '(1) the alleged error implicates a fundamental right; and (2) failure to review the alleged error would result in' a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the

4

proceedings, or compromise the integrity of the judicial process." *In re B.H.*, 2018 MT 282, ¶ 16, 393 Mont. 352, 430 P.3d 1006 (quoting *In re M.K.S.*, 2015 MT 146, ¶¶ 13-14, 379 Mont. 293, 350 P.3d 27).

¶8      L.S. argues that due process for the hearing-impaired requires a court to take sufficient measures to ensure such persons can understand the proceeding, and that the District Court here "failed to ensure L.S. could hear or otherwise understand the testimony, evidence, argument, findings, and rulings against her before ordering involuntary commitment." L.S. characterizes the record as demonstrating she could not hear despite having been provided hearing aids, and cites to the requirement of § 49-4-503(3)(a), MCA, that the court appoint a qualified interpreter to assist "a deaf person" subjected to confinement or "proceedings relating to mental health commitment[]." Consequently, she contends the order of commitment must be vacated.

¶9      The State responds that this issue was not preserved for appeal, requiring plain error review, for which an appropriate basis has not been here established. The State argues that, notwithstanding the requirement of a "plain or obvious error," *see State v. Soapes*, 2025 MT 296, ¶ 14, 425 Mont. 367, 581 P.3d 73, the District Court made no error at all because the record illustrates that L.S., despite some hearing loss, was able to hear and participate in the proceeding. The State argues that, after adjustments were made in response to L.S.'s complaints, the record shows that the proceeding continued for lengthy periods without interruption. The State notes the record is equivocal about whether L.S. was able to hear, after the evidentiary phase, all of the District Court's oral findings, but that a written order setting forth the findings was provided to her shortly after the hearing.

5

¶10    The lack of an objection during the proceeding that L.S. lacked sufficient hearing to meaningfully participate in the proceeding not only failed to preserve the issue, requiring plain error review, but also serves to confirm our assessment of the record that L.S. was able to hear and participate, communicating with her counsel and testifying in the proceeding.  Under these circumstances, we conclude plain error review is unnecessary to preserve the fundamental fairness of the proceeding, or to prevent a fundamental miscarriage of justice.

¶11    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  This appeal does not raise issues meriting plain error review, presents no issues of first impression, and does not establish new precedent or modify existing precedent.

¶12    Affirmed.

/S/ JIM RICE

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON